# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

*In re:* NationsRent, Inc. *et al.*

| | |
|---|---|
| NR Investments LLC, | |
| Appellants, | Civil Action No. 08-76 (GMS) |
| v. | |
| NationsRent Liquidating Trust, | Bankruptcy Case No. 01-11628 |
| Appellee. | Bankruptcy Appeal No. 08-02 |

## BRIEF OF APPELLEE THE NATIONSRENT LIQUIDATING TRUST

**For The Appellees:**

**BAYARD, P.A.**
Neil B. Glassman, Esq. (No. 2087)
Ashley B. Stitzer, Esq. (No. 3891)
Mary E. Augustine, Esq. (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000 (telephone)
(302) 658-6395 (facsimile)

-and-

**LOWENSTEIN SANDLER PC**
Paul Kizel, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (telephone)
(973) 597-2400 (facsimile)

{00936227;v1}

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF APPELLATE JURISDICTION ....................................................2

STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE STANDARD
  OF REVIEW ....................................................................................................2

STATEMENT OF THE CASE ................................................................................3

      A.     Nature of the Case ..............................................................................3

      B.     Course of the Proceedings ..................................................................4

      C.     Statement of Relevant Facts ...............................................................5

ARGUMENT ..........................................................................................................6

CONCLUSION ......................................................................................................11

# TABLE OF AUTHORITIES

**Pages**

CASES

American Flint Glass Workers Union v. Anchor Resolution Corp.,
  197 F.3d 76 (3rd Cir. 1999) ..............................................................3

In re: Best Products Co., Inc.,
  168 B.R. 35 (Bankr. S.D.N.Y. 1994) ..................................................6

In re Brown,
  951 F.2d 564 (3rd Cir. 1991) ............................................................3

In re Myers,
  491 F.3d 120 (3rd Cir. 2007) ............................................................3

In re Sonnax Industries, Inc.,
  907 F.2d 1280 (2d Cir. 1990) ............................................................2

United States v. U.S. Gypsum Co.,
  333 U.S. 364, 92 L.Ed. 746 (1948) ....................................................3

In re White Beauty View, Inc.,
    841 F.2d 524 (3d Cir. 1988)..................................................................................................2


**STATUTES**

11 U.S.C. § 510(a) ...............................................................................................................6

28 U.S.C. § 158 (a)(1)..........................................................................................................2


**RULES**

Rule 8013 of The Federal Rules of Bankruptcy Procedure ...............................................3

## PRELIMINARY STATEMENT

Appellee, the NationsRent Unsecured Creditors' Liquidating Trust ("Appellee" or "Liquidating Trust"), submits this brief in opposition to the appeal of NR Investments LLC ("NR Investments" or "Appellant") from the Memorandum Opinion (the "Opinion") and separate Order (the "Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 9, 2008.  The Order authorizes the Liquidating Trust to distribute $19 million of cash to holders of general unsecured claims against the chapter 11 debtor NationsRent, Inc. and affiliated debtors (collectively, "NationsRent" or "Debtors") in accordance with a distribution matrix described in the motion that the trust filed with the Bankruptcy Court in April, 2007.

NR Investments does not object to the Liquidating Trust making a distribution.  Rather, it argues that the proposed distribution matrix should be modified in a fashion that would allow it to receive a 100% distribution (as opposed to 4.4% like most other general unsecured claimants) on account of four (4) general unsecured claims totaling $10,216,629.98 (the "Relevant Claims") that it purchased from four (4) original creditors, none of whom ever asserted that the Relevant Claims were entitled to priority in payment over other general unsecured claims.  In particular, NR Investments argues that, pursuant to the subordination provisions contained in section 10.1 of an indenture agreement (the "Indenture") that the Debtors entered into with an indenture trustee for the benefit of holders of approximately $184 million of unsecured notes (the Senior Sub Notes), the Relevant Claims constitute "Senior Debt" (within the meaning of the indenture) and, therefore, the Senior Sub Notes are subordinated to the Relevant Claims and are not entitled to receive any distributions until the Relevant Claims are paid in full.   Based on this argument, NR Investments asserts that approximately $10.2 million out of the approximately $13 million that the Liquidating Trust has allocated for distribution to the Senior Sub Notes should instead be paid to satisfy the Relevant Claims in full.

The Bankruptcy Court rejected NR Investment's position by determining that the Relevant Claims are not Senior Debt.[1] This appeal followed. To succeed on its appeal, the Appellant must show that the Bankruptcy Court was clearly erroneous in determined that NR Investment did not carry its burden of proving that the Senior Sub Notes are subordinated to the Relevant Claims. As will be explained below, the result reached by the Bankruptcy Court's was correct. Accordingly, the appeal should be denied.

## STATEMENT OF APPELLATE JURISDICTION

The United States District Court for the District of Delaware has jurisdiction over this appeal pursuant to 28 U.S.C. § 158 (a)(1). Section 158 (a)(1) grants districts courts of the United States with jurisdiction to hear appeals from final judgments, orders and decrees entered by bankruptcy judges. 28 U.S.C. § 158 (a)(1).

In the content of bankruptcy cases, finality is viewed pragmatically and orders that finally dispose of discrete disputes are considered final. See, In re Sonnax Industries, Inc., 907 F.2d 1280, 1283 (2d Cir. 1990), In re White Beauty View, Inc., 841 F.2d 524, 526 (3d Cir. 1988). The Order in this case is a final order because it authorizes the Liquidating Trust to make a distribution of cash to hundreds of creditors of NationsRent and resolved the disputed and discrete issue of whether the Senior Sub Notes are subordinated to the Relevant Claims for purposes of distribution. Accordingly, § 158 (a)(1) provides the jurisdictional basis for this court to consider this appeal.

## STATEMENT OF ISSUES PRESENTED AND
## THE APPLICABLE STANDARD OF REVIEW

The issue to be determined by this appeal is whether the Bankruptcy Court correctly concluded that the Relevant Claims do not constitute "Senior Debt" within the meaning of the Indenture agreement.

---

[1] The Opinion also addressed and overruled objections that had been filed by a few other claimants who asserted that their claims also constituted Senior Debt [App., Ex. 1, ¶¶1-12]. The claims are not the subject of this or any other appeal.

The factual determinations of the bankruptcy court must be given conclusive effect unless they are clearly erroneous. In re Brown, 951 F.2d 564, 567 (3rd Cir. 1991). See also, American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3rd Cir. 1999); Bankruptcy Rule 8013. A determination is clearly erroneous only when "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 92 L.Ed. 746 (1948). The legal conclusions of the bankruptcy court are subject to de novo review by the district court. See, In re Myers, 491 F.3d 120, 125 (3rd Cir. 2007).

The Bankruptcy Court's determination that the Relevant Claims are not Senior Debt is a factual determination based on the record before it. Accordingly, the Order should be affirmed unless the Bankruptcy Court's determination was clearly erroneous.

## STATEMENT OF THE CASE

**A.**    **Nature of the Case**

This appeal arises from the Order of the Bankruptcy Court granting the Liquidating Trust's motion to make an interim distribution in the aggregate amount of $19 million to the beneficiaries of the trust, all of whom held general unsecured claims against chapter 11 debtor NationsRent, Inc. and affiliated debtors.

NR Investments, the purchaser of four (4) general unsecured claims totaling approximately $10.2 million (the "Relevant Claims"), does not object to the Liquidating Trust making a distribution but argues that the proposed distribution matrix is flawed. NR Investment asserts that the distribution matrix failed to give effect to the subordination provisions contained in section 10.1 of a prepetition indenture agreement that the Debtors entered into with an indenture trustee for the benefit of holders of approximately $184 million of unsecured notes (the Senior Sub Notes).

In sum, the crux of this appeal revolves around the characterization of the Relevant Claims and, in particular, whether they constitute "Senior Debt" within the meaning of the

subordination provisions of the indenture.  To the extent the Relevant Claims constitute Senior Debt, the Senior Sub Notes would be subordinated to the Relevant Claims, they would not be entitled to receive any distributions from the trust until the Relevant Claims are paid in full and a substantial portion of the approximately $13 million that the Liquidating Trust has allocated for distribution to the Senior Sub Notes would be paid to satisfy the Relevant Claims in full.  On the other hand, to the extent the Bankruptcy Court's Order is upheld and the Relevant Claims are not Senior Debt, NR Investment would receive the same pro-rata distribution that most other general unsecured creditors would receive.

**B.**    **Course of the Proceedings**

On December 17, 2001, NationsRent filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court the District of Delaware [App., Ex. 13, p.12].

On May 14, 2003, the Bankruptcy Court entered an order ("Confirmation Order") confirming the Debtors' first amended joint plan of reorganizations, dated as of February 7, 2003, as modified (the "Plan").  The Plan became effective on June 13, 2003 (the "Effective Date"). Pursuant to the Plan, the Liquidating Trust was created for the purpose of holding and liquidating certain assets for the beneficiaries of the trust, namely holders of general unsecured claims classified within class C-4 under the Plan [App., Ex. 5, ¶¶4-7].

On April 30, 2007, the Liquidating Trust filed a motion ("Motion") in the Bankruptcy Court seeking authorization to distribute an aggregate of $19 million in cash to beneficiaries of the trust in accords with the terms of a certain distribution matrix [App., Ex. 5].

On August 23, 2007, NR Investments filed its objection to the Motion asserting that the distribution matrix violated the indenture and section 510 of the Bankruptcy Code because it allegedly failed to take into consideration certain subordination provisions contained in the indenture which subordinated the rights of the Senior Sub Notes to certain types of claims [App.,

Ex. 15]. The Liquidating Trust filed its reply to the objection on October 18, 2007 [App., Ex. 16] and NR Investments filed a Sur-Reply on October 26, 2007 [App., Ex. 17].

On January 9, 2008 the Bankruptcy Court issued both the Opinion and Order granting the Motion with certain modification [App., Ex. 1 and 2]. The Opinion determined that the relevant claims NR Investments had purchased were not Senior Debt within the meaning of the indenture and therefore did not have priority in payment over the claims of the Senior Sub Notes [App., Ex. 1].

On January 10, 2008, NR Investments filed its notice of appeal.

**C.    Statement of Relevant Facts**

On December 17, 2001, the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware [App., Ex. 5, ¶4]. The Debtors were in the business of providing rental equipment in 26 states throughout the United States. [App., 13, p. 12].

On May 14, 2003, the Bankruptcy Court entered an order confirming the Debtors' Plan. Pursuant to the Plan, the Liquidating Trust was established and was funded with certain assets which were to be liquidated for the beneficiaries of the trust. Beneficiaries of the Liquidating Trust are the holders of general unsecured claims classified within Class C-4 under the Plan [App., Ex. 5, ¶4-7].

On April 30, 2007, the Liquidating Trust filed a motion with the Bankruptcy Court seeking approval of an initial distribution to the beneficiaries of the trust and approving a specific distribution matrix which contained, among other things, the name of each claimant, the amount of each allowed claim and proposed distribution amount [App., Ex. 5]. The Motion explained that the total amount of allowed Class C-4 claims is $431,653,040.47 and that, based on the aggregate distribution amount of $19 million, the pro-rata portion to be received by each holder of an allowed Class C-4 claim would be approximately 4.4%, with three exceptions [App., Ex. 5, ¶¶ 11-16].

First, the Motion explained that approximately $110,000,000 million of general unsecured claims (the "Seller Note Claims") falling within Class C-4 were based on promissory notes (the "Seller Notes") that NationsRent had issued prior to the Petition Date as part of the purchase price paid to various owners of businesses that were sold to the Debtors prior to the Petition Date. These Seller Note Claims, pursuant to the express terms of the Seller Notes, are expressly subordinated to the Senior Sub Notes that were issued pursuant to the indenture dated as of December 11, 1998 between the Debtors and the indenture trustee under the indenture [App., Ex. 5, ¶13]. Therefore, the Motion stated that no distributions would be made to any holders of Seller Note Claims. No holders of Seller Notes objected to the Motion.

In addition to the Seller Note Claims, the Motion provided that no distribution would be paid to holders of Class C-4 claims if (a) the amount of the claim is listed as "unliquidated" or without a stated amount or (b) the distribution on account of such claim would be less than twenty-five dollars ($25.00) [App., Ex. 5, ¶¶14 and 15].

The affect of the subordination of the Seller Note Claims to the $184 million in Senior Sub Notes results in the holders of the Senior Sub Notes receiving approximately $13 million of the total $19 million distribution (or approximately a 7% distribution) as compared to a 4.4% distribution on account of other claims (other than those exceptions described above).

## ARGUMENT

### The Bankruptcy Court Did Not Error By Determining That The Relevant Claims Are Not Senior Debt

Section 510 (a) of the Bankruptcy Code provides that "(a) subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). As the party seeking enforcement of a subordination provision pursuant to section 510(a), NR Investments carried the burden of proving that the Senior Sub Notes are subordinated to the Relevant Claims. See In re: Best Products Co., Inc., 168 B.R. 35, 69 (Bankr. S.D.N.Y. 1994). An examination of all relevant

documents demonstrate that the Bankruptcy Court correctly concluded that NR Investments did not satisfy the burden, that the Relevant Claims are not Senior Debt and, ultimately, that the Senior Sub Notes are not subordinate to the Relevant Claims.

There is no dispute that the terms of the Indenture and the Settlement Agreements (as defined in the Opinion) are the key operative documents. In particular, Section 10.01 of the Indenture contains the following general subordination provision that makes the Senior Sub Notes junior in payment priority to obligations that fall within the definition of "Senior Debt."

> The Company covenants and agrees and the Trustee and each Holder of the Notes, by its acceptance thereof, likewise covenants and agrees, that all Notes shall be issued subject to the provisions of this Article Ten; and the Trustee and each person holding any Note, whether upon original issue or upon transfer, assignment or exchange thereof, accepts and agrees that the payment of all Obligations on the Notes by the Company shall, to the extent and in the manner herein set forth, be subordinated and junior in the right of payment to the prior payment in full in cash or Cash Equivalents of all Obligations on the Senior Debt. . ."

App., Ex. 6, pp. 79-80

"Senior Debt," in turn, is defined in Section 1.01 of the Indenture as:

> "SENIOR DEBT" means the principal of, premium, if any, and interest (including any interest accruing subsequent to the filing of a petition of bankruptcy at the rate provided for in the documentation with applicable law) on any Indebtedness of the Company, whether outstanding on the Issue Date or thereafter created, incurred or assumed, unless, in the case of any particular Indebtedness, the instrument creating or evidencing the same or pursuant to which the same is outstanding expressly provides that such Indebtedness shall not be senior in right of payment to the Notes . . . . Notwithstanding the foregoing, "Senior Debt" shall not include: (i) any Indebtedness of the Company to a Subsidiary of the Company or any Affiliate of the Company or any of such Affiliates Subsidiaries, (ii) Indebtedness to, or guaranteed on behalf of, any shareholder, director, officer or employee of the company or any Subsidiary of the Company (including, without limitation, amounts owed for compensation), (iii) Indebtedness to trade creditors and other amounts incurred in connection with obtaining goods, materials or services (excluding Purchase Money Indebtedness). . .

Id. at pp. 24-25.

The term "Purchase Money Indebtedness" is defined as "Indebtedness . . . incurred in the normal course of business for the purpose of financing all or any part of the purchase price, . . . of property or equipment." Id. at p. 22. Significantly, with respect to the definition of Indebtedness, which is part of the term Purchase Money Indebtedness, the Indenture states, in pertinent part, as follows:

> "INDEBTEDNESS" means with respect to any Person, without duplication, (i) all Obligations of such Person for borrowed money, (ii) all Obligations of such Person evidenced by bonds, notes or other similar instruments, (iii) all Capitalized Lease Obligations of such Person, (iv) all Obligations of such Person issued or assumed as the deferred purchase price of property. All conditional sale obligations and all Obligations under any title retention agreement (but excluding trade accounts payable, leases that are not Capitalized Lease Obligations and other accrued liabilities arising in the ordinary course of business), . . . <u>(vii) all Obligations of any other Person of the type referred to in clauses (i) through (vi) which are secured by any lien on any property or asset of such person, the amount of such Obligation being deemed to be the lesser of the fair market value of such property or asset or the amount of the Obligation so secured,</u> . . . . (emphasis added).

Id. at p. 12.

The underlined portion of the term "Indebtedness" makes clear that to the extent any obligations are secured by any lien on any property, the amount of such obligation is the lesser of (i) the fair market value of such property, or (ii) the amount of the obligation. In other words, the amount of any deficiency claim (the difference between the amount of a claim and the value of collateral securing the debt), such as each Relevant Claim, is not included within the definition of Indebtedness.

With respect to the Settlement Agreements, the Bankruptcy Court correctly observed that they are substantially identical and substituted the original claim into general unsecured claims under the Settlement Documents. Indeed, paragraph C of the first page of each of the Settlement Agreements clearly reflects the intent of the Debtors and the original claimants to "terminate the

Pre-Petition Agreements; cause each of the borrowers and Lender to be fully and finally released from any and all liabilities and obligations arising under or in connection with the Pre-Petition Agreements; and enter into a new financing arrangement with respect to the Equipment . . . ." [See Finova Master Equipment Financing, Security Agreement, and Settlement Agreement, App., Ex. 8], and other Settlement Agreements attached as part of Exhibits 9 and 10 of Appendix. Thus, the Bankruptcy Court was on firm footing by concluding that "The Settlement Agreements expressly terminated the prepetition agreements with the Lenders and created new rights and obligations." [app., Ex. 1, p21].

Therefore, as the Bankruptcy Court correctly found, once the Settlement Agreements became effective, to the extent the original claims may have once been in the nature of purchase money indebtedness (which the Liquidating Trust disputes), they became distinct general unsecured claims and would no longer enjoy any seniority status under the indenture [App., Exhibit 1, p. 21]. Neither the orders nor the motions seeking to approve the Settlement Agreements stated or suggested that the claims established pursuant to the Settlement Agreements (all approved after the plan was confirmed and became effective) would constitute Purchase Money Indebtedness (within the meaning of the Indenture) or have any seniority over the Senior Sub Notes. Moreover, none of the original claimants ever asserted or suggested that the claims established by the Settlement Agreements would have priority over the Senior Sub Notes. Significantly, NR Investments, the party that had the burden of proof of proving that the Senior Sub Notes are subordinate to the Relevant Claims, failed to submit any evidence from the original claimants that would support its position.

In short, the Bankruptcy Court's finding that the Relevant Claims are not Senior Debt was supported by the evidence and is not clearly erroneous. Accordingly, the Order should not be disturbed.

Finally, *assuming arguendo*, that the Relevant Claims are deemed to be obligations under the original loan agreements with the original equipment lenders, a careful analysis of the relevant terms of the Indenture demonstrates that the Relevant Claims do not constitute Purchase

Money Indebtedness and, therefore, do not qualify for Senior Debt status.[2]  In particular, as noted above, under the terms of the Indenture, the amount of any "Indebtedness," which is part of the definition of Purchase Money Indebtedness, is limited to the lesser of the fair market value of the property securing the Indebtedness or the amount of the claim secured by the lien.  In other words, the amount of deficiency claims, such as the Relevant Claims, are not included in definition of Purchase Money Indebtedness.

In this case, each of the Relevant Claims is admittedly a deficiency claim.  Given that Purchase Money Indebtedness does not include the deficiency portion of a claim secured by collateral, the Relevant Claims are not Purchase Money Indebtedness within the meaning of the Indenture.  Therefore, the Relevant Claims are not Senior Debt and they are not entitled to the benefits of the subordination provision contained in the Indenture.

---

[2] The Bankruptcy Court acknowledged that the Liquidating Trust asserted this second argument [App., Ex. 1, p.19], but did not address it because it found that the Relevant Claims (described in the Opinion as the "Assigned Claims") were not in the nature of purchase money indebtedness. [App., Ex. 1, p. 21].  The Liquidating Trust, however, reserves this alternative argument in the event this Court determines that the basis for the Bankruptcy Court's ruling was in error.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Liquidating Trust respectfully requests that this Court affirm the Order of the Bankruptcy Court.[3]


Dated:  May 12, 2008

**BAYARD, P.A.**

                       */s/ Mary E. Augustine*
                       Neil B. Glassman, Esq. (No. 2087)
                       Ashley B. Stitzer, Esq. (No. 3891)
                       Mary E. Augustine, Esq. (No. 4477)
                       222 Delaware Avenue, Suite 900
                       Wilmington, Delaware  19899
                       (302) 655-5000 (telephone)
                       (302) 658-6395 (facsimile)

                       -and-

                       **LOWENSTEIN SANDLER PC**
                       Paul Kizel, Esq.
                       65 Livingston Avenue
                       Roseland, New Jersey 07068
                       (973) 597-2500 (telephone)
                       (973) 597-2400 (facsimile)
                       *Attorneys for Appellee*

---

[3] To the extent this Court does not affirm the Order, the Liquidating Trust submits that the matter should be remanded for further proceedings to determine the appropriate distribution to the holders of the Relevant Claims.  In particular, in the event the Relevant Claims are deemed Senior Debt, other similar types of claims (purchase money security interest claims) may also be entitled to the benefit of the subordination provisions of the Indenture.  Moreover, the Appellant requests that $10,216,629.98 of the distribution amounts that would otherwise by payable to the Senior Sub Notes should be paid to the Appellant to satisfy the Relevant Claims. Appellant's Brief, p.24.  However, according to the Appellant, the Relevant Claims total $10,216,629.98. Appellant's Brief Footnote 2.  Given that the proposed distribution already provides for the payment of a portion of the Relevant Claims, any additional amounts to be paid should take into account the fact that the distribution matrix provides for certain distribution to be made on account of the Relevant Claims.

## CERTIFICATE OF SERVICE

I, Mary E. Augustine, hereby certify that on this 12th day of May, 2008, I caused a copy

of the foregoing **Brief of Appellee NationsRent Liquidating Trust** to be served upon the

parties listed below in the manner indicated.

### *VIA* HAND DELIVERY

Derek C. Abbott, Esquire
Thomas F. Driscoll, III, Esquire
*Morris, Nichols, Arsht & Tunnell LLP*
1201 North Market Street
Wilmington, DE 19801

### *VIA* FIRST CLASS MAIL

Kristopher M. Hansen, Esquire
Sherry J. Millman, Esquire
Abigail M. Beal, Esquire
*Stroock & Stroock & Lavan LLP*
180 Maiden Lane
New York, NY 10038-4982

_____ */s/ Mary E. Augustine* _____
Mary E. Augustine (No. 4477)