IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*In re*: NationsRent, Inc. *et al.*

| | |
|---|---|
| NR Investments LLC,<br><br>Appellants,<br><br>v.<br><br>NationsRent Liquidating Trust,<br><br>Appellee. | Civil Action No. 08-76 (GMS)<br><br>Bankruptcy Case No. 01-11628<br>Bankruptcy Appeal No. 08-02 |

### REPLY BRIEF OF APPELLANT NR INVESTMENTS LLC

**For the Appellants:**

**Morris Nichols Arsht & Tunnell LLP**
1201 North Market Street
Wilmington, Delaware 19801
302- 658-9200
Derek C. Abbott (No. 3376)
Thomas F. Driscoll III (No. 4703)

and

**Stroock & Stroock & Lavan LLP**
180 Maiden Lane
New York, New York 10038
212-806-5400
Kristopher M. Hansen
Sherry J. Millman
Abigail M. Beal

NY 71460615v6

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

    The Appeal Should Be Reviewed De Novo ................................................................1

    The Relevant Claims, As General Unsecured Claims, Are Still Senior Debt Under the Subordination Provisions of the Indenture........................................................2

    The Relevant Claimants Timely Raised the Issue of Subordination ...................................4

    The Relevant Claims are Clearly Purchase Money Indebtedness Claims Under the Terms of the Indenture..........................................................................................6

    It is Not Appropriate to Remand This Matter to Determine if There are Other Similar Types of Claims that are Entitled to Subordination ...............................................9

Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*In re American Pad & Paper Co.*, 478 F.3d 546, 551 (D. Del. 2007)..............................................1

*In re Oakwood Homes*, 449 F.3d 588 (Del. 2006)..........................................................................5

## STATUES

11 U.S.C. §506(a)(1) ........................................................................................................................3

NY 71460615v6

NR Investments LLC (the "**Appellant**" or "**NR Investments**")[1], by and through its undersigned counsel, hereby submits this reply brief in further support of its opening brief filed on April 16, 2008, (the "**Opening Brief**"), and in response to the brief of the NationsRent Liquidating Trust (the "**Appellee**" or the "**Liquidating Trust**"), filed on May 12, 2008 (the "**Appellee Brief**").

## ARGUMENT

### The Appeal Should Be Reviewed De Novo

The Appellee misstates the standard of review appropriate for this Appeal by asserting that the Order of the Bankruptcy Court should be affirmed unless the Bankruptcy Court's determination was "clearly erroneous." The correct standard of review in this Appeal is *de novo*. Although factual findings are reviewed under a clearly erroneous standard, a less stringent "*de novo*" review is applied for issues of law. *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (D. Del. 2007).

Neither of the parties disputes the facts in this case. Instead, this Appeal involves a question of law as to the validity and enforceability of the subordination rights of the holders of the Relevant Claims pursuant to specific language of an Indenture and the general legal principles regarding subordination. The Appellee erred in its assertion that the District Court is required to uphold the Bankruptcy Court Opinion unless it finds that the Opinion was clearly erroneous; the Bankruptcy Court's legal determinations are subject to *de novo* review by this Court.

---

[1] All capitalized terms not defined herein shall have the definition given to them in the Opening Brief or the Appellee Brief.

1

## The Relevant Claims, As General Unsecured Claims, Are Still
## Senior Debt Under the Subordination Provisions of the Indenture

The Opening Brief sets forth the reasons why, based upon the subordination language in the Indenture that governs the relationship among the creditor parties, the Relevant Claims are entitled to seniority over the claims of the Senior Sub Notes. In its brief, the Appellee focuses only on the Bankruptcy Court's finding that since the Settlement Agreements "expressly" terminated the pre-petition agreements, the Relevant Claims were "transformed" into newly created "general unsecured" claims thereby losing their "priority" as Senior Debt under the Indenture. The Appellee's focus and the Bankruptcy Court's opinion ignore the plain language of the Settlement Agreements which provide that the provisions describing the "termination" of the pre-petition agreements do not apply to the Relevant Claims, which are specifically preserved (not transformed) and allowed as "general unsecured claims." (Settlement Agreements, §§1.4 & 1.5) [App., Ex. 8-11; Bankr. D.I. 3567-8, 3567-9, 3567-10 & 1851]. The Appellee fails to address the basic bankruptcy law concept raised by Appellant that even as a "general unsecured" claim against the Debtors, the Relevant Claims continue to be entitled to the benefits of the contractual subordination against other general unsecured claims. The Appellee confuses the distinction between "priority" among classes of creditors, which is clearly reflected and defined in the Plan of Reorganization and bankruptcy law, and which has nothing to do with inter-creditor rights, and "seniority" amongst creditors within a single class, as set forth in the subordination provisions of the Indenture and specifically preserved by the Plan of Reorganization -- they are not the same concept.

The Appellee argues that the Settlement Agreements transformed the Relevant Claims into "distinct general unsecured claims" and as such, they would no longer enjoy any seniority status under the Indenture. The fact that the Relevant Claims are general unsecured

2

claims is not in issue. Under the most basic principles of bankruptcy law, the Relevant Claims, as the deficiency portion of a secured claim, have always been general unsecured claims even before the Debtors and the claimholders entered into the Settlement Agreements. 11 U.S.C. §506(a)(1). The purpose of the Settlement Agreements was to reflect an agreement between the Debtors and the claimholders as to the value of the secured portion of the original claims, based upon the depreciated market value of the underlying equipment, and to preserve and quantify the remaining unsecured deficiency portion as an allowed claim. Again, another basic bankruptcy law concept is that even as a general unsecured claim, the claim must be quantified and allowed in order for it to receive a distribution which is exactly what the claimholders and the Debtors were agreeing upon in the Settlement Agreements.

As was demonstrated in the Opening Brief, although the Relevant Claims are general unsecured claims, the Relevant Claims are still senior to other claims within that class, as their subordination rights have remained intact. The Settlement Agreements addressed an agreement between the Debtors and the holders of the Relevant Claims; they did not attempt in any way to govern (or transform) the relationship between the holders of the Relevant Claims and the holders of the Senior Sub Notes, which were fixed by the subordination provisions of the Indenture.

The Indenture, the document governing the inter-creditor relationship, specifically states that subordination rights of creditors remain unaffected, regardless of an agreement between the holders of Senior Debt and the Debtors. (Indenture, §10.10) [App., Ex. 6; Bankr. D.I. 3567-1]. Accordingly, even if the plain language of the Settlement Agreements is ignored and the Court finds that the Settlement Agreements altered the Relevant Claims in some way, the clear language of the Indenture, which permits all manner of "transformation" of a creditor's

3

rights against the Debtor without altering in any way a creditor's subordination rights against junior creditors, cannot be ignored.

The Plan of Reorganization also is clear that the subordination rights will not be affected by the classification of claims. The Plan provides that "the classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any distribution." (Plan of Reorganization, Art. XI(C)) [Ex. 12, Bankr. D.I. 1824].

It also defies reason that the Appellee is prepared to enforce the subordination rights of the Senior Sub Notes, which are classified as general unsecured claims, against the Seller Notes, which are also classified as general unsecured claims, while arguing that the Relevant Claims are not entitled to enforce their subordination rights *because* they are general unsecured claims.

### The Relevant Claimants Timely Raised the Issue of Subordination

The Appellee asserts that the holders of the Relevant Claims never stated, asserted or suggested that the Relevant Claims were entitled to Senior Debt status, and that NR Investments never submitted evidence supporting the Senior Debt status of the Relevant Claims. The Appellee implies that the holders of Senior Debt should have raised their senior status at an earlier stage in the bankruptcy case, and that now, the Appellant is somehow estopped from raising those issues. Here, as elsewhere in its brief, the Appellee points to issues that were not raised on appeal and that are therefore beyond the jurisdiction of this Court. In any event, however, Appellee is simply mistaken.

There was never any requirement for the holders of the Relevant Claims to assert their inter-creditor rights at any time over the course of this bankruptcy case until the Appellee

4

stated its position in the Distribution Motion that it would not enforce the subordination rights of the Relevant Claims. Indeed, until the filing of the Distribution Motion, the issue of seniority of the Relevant Claims was never challenged and it was expected that the Appellee, as Trustee for the benefit of all of the general unsecured claims, would correctly apply the inter-creditor rights among all applicable general unsecured claims and not just those claims related to the Senior Sub Notes. Moreover, at no point during the bankruptcy case were inter-creditor rights raised by any claimant in any manner, including the Senior Sub Notes. Indeed no holder of the Senior Sub Notes, nor the indenture trustee of the Senior Sub Notes, has challenged NR Investments' position with respect to the Distribution Motion, and all inter-creditor rights were preserved under the Plan.

Throughout the bankruptcy case, the Disclosure Statement [App., Ex. 13, Bankr.D.I. 1825; XI(C)], Plan of Reorganization [App., Ex. 12, Bankr.D.I. 1824, p.58], and the Confirmation Order [App., Ex. 14, Bankr.D.I. 2151, p.14-15] have all included explicit language that protected the Senior Debt holders with respect to their intercreditor rights stating that the subordination rights of parties were preserved. In fact the Disclosure Statement specifically states that the Senior Sub Notes *"are subordinated and junior in right of payment to the Debtors' senior debt."* (Discl. St., p.13) [App., Ex. 13; Bankr. D.I. 1825] (emphasis added). Given the protections of the plan documents, section 510 of the Bankruptcy Code, and the language of the Indenture, to assert subordination rights earlier would have been redundant.

Further, as to the Appellee's argument that NR Investments failed to submit evidence to support its position, there is no other evidence to review beyond the Plan, Disclosure Statement, Settlement Agreements and relevant Indenture. The Bankruptcy Court ruled that the Indenture is unambiguous and that the parties' rights are to be determined from the express

5

NY 71460615v6

language of the agreement without resorting to extrinsic evidence. Accordingly, the Appellant has submitted the only real evidence required in its pleadings: the Indenture, the Settlement Agreements, the Disclosure Statement and Plan of Reorganization, which taken together unambiguously establish and preserve the subordination rights of the Relevant Claims as against the Senior Sub Notes. Objection [App., Ex. 15; Bankr.D.I. 3567]; Sur-Reply [App., Ex.17; Bankr.D.I. 3577].

Contrary to what Appellee would have this Court believe, the issue of subordination is not an eleventh hour argument that will upset the distribution scheme and result in an unfair outcome. Other than the holders of the Senior Sub Notes, all other claim holders will receive the original *pro rata* distribution provided in Appellee's Distribution Scheme. As for the holders of the Senior Sub Notes, most of their recovery was as a result of the Appellee's enforcement of the subordination rights of the Senior Sub Notes, held by sophisticated institutional investors, against the Seller Notes, held by small business owners who sold their businesses to the Debtor. As a sophisticated institutional investment, the Senior Sub Notes were designed to offer a higher rate of return in exchange for the added risk of subordinating their recovery in a bankruptcy to the Debtors' Senior Debt holders. Now equity demands that the holders of the Relevant Claims, as holders of Senior Debt, be given the benefit of their bargain and be permitted to enforce the subordination provisions of the Indenture.

### The Relevant Claims are Clearly Purchase Money Indebtedness Claims Under the Terms of the Indenture

The Appellee also presents a red herring by asserting that the Relevant Claims are not Senior Debt. However, the Appellee completely misreads the provisions of the Indenture, and in doing so, incorrectly asserts that the Relevant Claims are not, and never have been, deemed "Indebtedness" under the Indenture, and therefore cannot be "Purchase Money Indebtedness"

6

entitled to the benefits of the subordination provisions as Senior Debt. As a threshold matter, this argument was previously raised by the Appellee in its Reply [App., Ex. 16; Bankr. D.I. 3575], but was never addressed by the Bankruptcy Court in the Opinion, and was never designated by Appellee as an issue for appeal. Because the Appellee did not specifically reserve its right to appeal this issue before this Court, the Appellee is barred from raising this issue now. See *In re Oakwood Homes*, 449 F.3d 588 (Del. 2006).

However, even if the Appellee had timely appealed this issue, there is no merit to the Appellee's position. As the Relevant Claim holders argued before the Bankruptcy Court, the Appellee misreads the definition of "Indebtedness" in the Indenture, leading to an incorrect and nonsensical conclusion that the Relevant Claims are not "Indebtedness" for purposes of the Indenture.

The Appellee asserts that clause (vii) of the definition of Indebtedness in the Indenture means that to the extent that any "Indebtedness" represents obligations secured by any lien on any property, the amount of the obligation is the lesser of (i) the fair market value of the property, or (ii) the amount of such obligations. This means that, according to the Appellee, any difference between the amount of a debt and the value of the collateral securing such debt, is not included in the definition of Indebtedness.

As was previously explained in the Appellant's Sur-Reply [App., Ex. 17, Bankr. D.I. 3577] and as discussed in detail at the hearing before the Bankruptcy Court (Transcript, p.79-87; Bankr. D.I. 3598] this interpretation of the definition of Indebtedness a flat misreading of such definition. Clause (vii) of the definition of Indebtedness, relied upon by the Appellee, does not apply to secured indebtedness issued by the Debtors, like the Relevant Claims, but only applies to obligations of a third party that are secured by assets of the Debtors. Thus, clause (vii) relates

7

to an indirect obligation of the Debtors, which is made clear by the words *"any other person"* contained in the Indebtedness definition. Read properly, beginning with the lead-in to the sub-clauses, clause (vii) of the Indebtedness definition effectively reads "Indebtedness means with respect to any Person [the Debtors], all Obligations *of any other Person* [a third party, not the Debtors], which are secured by any lien on any property or assets of such Person [the Debtors]." (Indenture, p.12) [App., Ex. 6; Bankr.D.I. 3567-1]. Thus, for obligations that are not direct obligations of the Debtors, but for which the Debtor pledges collateral, the Debtors need only count as Indebtedness the amount equal to the "lesser of the fair market value of such property or asset or the amount of the Obligations so secured."

Clearly, clause (vii) of the definition of Indebtedness does not apply to the direct obligations of the Debtors. If the Debtors' Indebtedness were only counted to the extent of the fair market value of any underlying collateral, the calculation of the Debtors' obligations would have been dramatically less – perhaps eliminating the need for the Debtors' chapter 11 filing.

The Appellee's mis-reading of clause (vii) of the definition of Indebtedness also leads to the nonsensical result that the unsecured, deficiency portion of a secured obligation is excluded from the subordination provisions of the Indenture. This is an absurd result. The point of subordination is for the senior creditor to be made whole before the junior creditor receives a distribution. The secured portion does not need the benefits of subordination since it is protected by the collateral to be made whole. It is only the unsecured, deficiency portion, which has no underlying collateral (and thus is a general unsecured claim), that needs the benefits of subordination to be made whole.

Thus, it is clear by a plain reading of the Indenture that the Relevant Claims do not fit under clause (vii) of the definition of Indebtedness. The Relevant Claims are direct obligations

8

of the Debtors which are included in clause (iv) of the definition of Indebtedness which reads "all Obligations of such person issued or assumed as the deferred purchase price of property" which in this case was for the purchase of equipment. Accordingly, there is no limitation on the calculation of the amount of these obligations. Based upon the terms of the Indenture, the Relevant Claims are deemed both "Indebtedness" and "Purchase Money Indebtedness," a fact that the Bankruptcy Court in the Opinion never disputed and an issue that the Appellee never appealed, and as such, the Relevant Claims are entitled to be treated as Senior Debt claims under the Indenture with the full rights to enforce the subordination provisions of the Indenture against the Senior Sub Note holders.

### It is Not Appropriate to Remand This Matter to Determine if There are Other Similar Types of Claims that are Entitled to Subordination

Finally, if this Court agrees with the Appellant's position and reverses the Order, there is no need, as the Appellee suggests in footnote three of its brief, to remand this matter for further proceedings to determine if there are other similar types of purchase money claims that may be entitled to the subordination provisions of the Indenture. Approximately a year has passed since the Distribution Motion was filed on April 30, 2007 [App., Ex. 5; Bankr. D.I. 3555] and the Objection to the Distribution Motion was filed on August 23, 2007. [App., Ex. 15; Bankr. D.I. 3567]. The Appellee also has administered the liquidating trust for over five years. Only one other claimant filed an objection to the Distribution Motion, which objection has been settled. At this point in the appeal process, it is clear that except for the objections already on file, the time to object to the Distribution Motion has expired. Because any other claim holders are now estopped from asserting any rights with regard to the Distribution Motion, there would

9

NY 71460615v6

be no factual determination for the Bankruptcy Court to consider on remand, were the Appellant to prevail in this Appeal.[2]

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Opening Brief, the Appellant respectfully requests that this Court reverse the Order and Opinion of the Bankruptcy Court, and provide that the holders of the Relevant Claims are entitled to payment in full on the Relevant Claims as Senior Debt, prior to any recovery to the holders of the Senior Sub Notes.

Dated: May 22, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Thomas F. Driscoll III (No. 4703)
1201 North Market Street
Wilmington, Delaware 19801
(302) 658-9200

and

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen, Esq.
Sherry J. Millman, Esq.
Abigail M. Beal, Esq.
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Counsel for the Appellant

---

[2] The Appellant agrees with the Appellee's statement in footnote 3 of the Appellee Brief that "the proposed distribution already provides for the payment of a *portion* of the Relevant Claims..." (emphasis added). Thus, the Appellant agrees that any additional amounts to be paid to the Appellants should take into account the fact that the Distribution Scheme currently provides for a recovery, albeit inadequate, for the holders of the Relevant Claims.

10

## CERTIFICATE OF SERVICE

I, Thomas F. Driscoll III, certify that I am not less than 18 years of age, and that service of the foregoing **Reply Brief Of Appellant NR Investments LLC** was caused to be made on May 22, 2008, in the manner indicated upon the entities identified below:

Date: May 22, 2008

_____
Thomas F. Driscoll III (No. 4703)

### BY HAND DELIVERY

Neil B. Glassman, Esquire
Ashley B. Stitzer, Esquire
Mary E. Augustine, Esquire
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

### BYFIRST CLASS MAIL

Paul Kizel, Esquire
65 Livingston Avenue
Roseland, NJ 07068

2340246.1